In re O'BRIEN'S TRUST ESTATE et al. HILPIRT et al. v. O'BRIEN'S ESTATE et al.

No. 32287. Sept. 17, 1946.

*172 P. 2d 607.*

Gilliland, Ogden, Withington & Shirk, of Oklahoma City, for plaintiffs in error.

Monnet, Hayes & Brown and Cargill, Eagleton & Cargill, all of Oklahoma City, for defendants in error.

DAVISON, J. This appeal concerns a controversy over property belonging to Patrick O'Brien, an 85-year-old resident of Oklahoma county, Okla., between said owner and certain of his prospective heirs. The real estate involved is 40 acres of Canadian county land that became valuable with the development of the West Edmond oil field.

The controversy had its inception in proceedings instituted in the county court of Oklahoma county in February, 1944, by Leo C. O'Brien, a nephew of Patrick O'Brien, to have a guardian appointed for the latter on the ground of incompetency. This endeavor apparently had the support of some of the aged property owner's other relatives, and an Oklahoma City attorney was employed to represent the petitioner in said proceedings. Patrick O'Brien employed another Oklahoma City attorney to represent him in resisting his relatives' effort to place him under guardianship. On or about the date the petition was to be heard, efforts were commenced to reach an amicable settlement of the matter. After several conferences, concerning such settlement, it was agreed that O'Brien's property should be put in trust rather than having him declared incompetent, and a guardian appointed. Accordingly, on March 7, 1944, O'Brien, in consideration for his relatives, forbearance from prosecuting the guardianship proceedings, executed a trust agreement whereby he purported to convey the land involved and to deliver his cash in the amount of $400 to a brother, Charles M. O'Brien, as his trustee. Among other things, the agreement also provided that said trustee was to pay said trustor for his personal use and support the sum of $100 per month and at the expiration of 21 years from the date of the instrument or upon the trustor's death prior to that date, the said trustee, his successor or assigns, should, by proper instruments, convey all of the trust property to the persons who were at that time heirs of the trustor under the laws of descent and distribution. On the second day after the execution of the trust agreement, an order was entered in the guardianship proceedings with the approval of the attorney previously employed by the trustee and beneficiaries of the trust denying the petition theretofore filed therein and adjudging Patrick O'Brien competent.

After the trust was placed in operation, the said trustor sought to have the trust agreement revoked, and through the attorney who had represented him in its creation, procured the service of other attorneys for this purpose. Thereafter, in December, 1944, Patrick O'Brien executed an instrument designated as a revocation of the trust and same was attached to a motion filed on his behalf in the district court asking said court, in accordance with said revocation, to order the trust property restored to him by the trustee. To said motion, a response was filed by the present trustee, joined by Leo C. O'Brien, Walter Murphy, Charles M. O'Brien, Clara O'Brien Smith, May McGovern, and Charles O'Brien, all of whom are represented to be prospective heirs of Patrick O'Brien, and consequently beneficiaries under the trust agreement. In said pleading, it was alleged, inter alia, that the trust agreement was intended to be an irrevocable transfer of property, and that if said instrument is not irrevocable by its terms, it does not express the true intention and agreement of the parties and should be reformed. In their prayer for relief said parties asked that, in the event the court found that the agreement was revocable, the court reform the instrument by inserting therein an express clause of irrevocability.

On the issues joined by the pleadings

aforesaid and others filed by the parties, a trial was had to the court which resulted in specific findings and a judgment in favor of Patrick O'Brien. From said judgment, the trustee and the trustor's prospective heirs above named have lodged this appeal. They and their adversary will hereinafter be generally referred to as "appellants" and "appellee".

In support of the trial court's conclusion that the trust agreement was revocable, our attention is called to that portion of our statutes entitled "Oklahoma Trust Act" wherein by 60 O.S. 1941 § 175.41 it is provided, inter alia, that:

"Every trust shall be revocable by the trustor, unless expressly made irrevocable by the terms of the instrument creating the same."

The trust agreement in question reads in part as follows:

"Know All Men By These Presents:

"I, Patrick O'Brien, a single man, of Oklahoma County, Oklahoma hereinafter called the grantor, for and in consideration of the sum of One Dollar to me in hand paid and other good and valuable considerations, the receipt of all of which is hereby acknowledged, have granted, bargained, sold, conveyed, delivered, and do hereby grant, bargain, convey, sell and deliver unto Charles M. O'Brien, hereinafter called the trustee, of Oklahoma County, Oklahoma, the following described real estate and premises situated in Canadian County, Oklahoma, to-wit:

"SE¼ of Section 12, Township 14, Range 5, Canadian County, Oklahoma

—said conveyance being *absolute* at this time but subject to the conditions hereinafter set forth (emphasis ours) . . .'"

Appellants argue that the trust agreement by its terms constituted an absolute conveyance to the trustee and in addition to the provision for the trustee's conveyance of the trust property to the heirs upon expiration of the trust or death of the trustor hereinbefore mentioned, they cite as evidence of the agreement's irrevocability, the way in which the word "absolute" is used in the last sentence above quoted. Appellee says the word "absolute," as used, merely describes the character of the estate conveyed; that it refers to the title to be held by the trustee during the term of the trust and has no bearing on its revocability. In Ketch v. Smith, 131 Okla. 263, 268 P. 715, 717, this court said:

"The word 'absolute' as defined in Black's Law Dictionary, means: Unconditional; complete and perfect in itself; without relation to, or dependence on, other things or person."

This is the sense in which the term is generally used in connection with a sale, grant, or gift of real property. 1 C. J. 362, note 41. Thus it has been said that a sale is absolute which has been completed or perfected, while a conditional sale is one which takes effect or is to become complete upon the performance of a condition. Whitsett v. Carney (Tex. Civ. App.) 124 S. W. 443. And the term has been used as synonymous with "fee simple". Bouvier's Law Dictionary (3rd Rev.) vol. 1, pgs. 92, 93; 1 C. J. 363, note 42. And the expression "absolute fee simple" or "fee simple absolute" is one of common usage and acceptance in the law as denoting a title without bounds, limitations, or condition. See authorities cited under the note, supra, in Corpus Juris. Our attention has been directed to no case dealing with such matters in which "absolute" has been held to mean "irrevocable". We are of the opinion that neither by the word in question, nor the context of the sentence in which it appears, was the trust involved "expressly made irrevocable" as contemplated by the statute, supra. Nor do we find any other expressions or provisions within the four corners of the instrument which could be held to expressly make the trust irrevocable.

We now come to appellants' contention that, if by the language used in the instrument itself, the trust was not made irrevocable, said instrument

does not accord with the oral agreement and intention of the parties concerned and should have been ordered reformed. Other than the written instrument itself, we have only the testimony of the parties themselves, and their lawyers, together with a few somewhat equivocal circumstances from which to determine what was agreed to and intended. As is so often true of such cases, the testimony is in direct conflict.

It is undisputed that after all parties were in agreement on the substitution of a trust for a guardianship, the drawing of the trust agreement was left largely to the attorney for Patrick O'Brien's relatives, the opposing counsel asking him to submit same after completion, and if then found satisfactory, it would then be signed by his client, Patrick O'Brien. The testimony of more than one of the relatives was to the effect that they were led to believe by their own counsel and Patrick O'Brien's attorney, if not by Patrick O'Brien himself, that the creation of the trust would effect a "permanent" disposition of the matter and that they would not have agreed to it had they not so believed, but there is no direct proof that this belief, intention or agreement, was mutual. Under the rule governing the reformation of deeds and other instruments of like verity and solemnity (which both counsel agree must govern this case) a mistake which will justify reformation of such an instrument must be mutual. Setterstrom v. Phelan, 182 Okla. 453, 78 P. 2d 415; Eason Oil Co. v. Whiteside, 175 Okla. 254, 52 P. 2d 35; Wilson v. Olsen, 167 Okla. 527, 30 P. 2d 710; Critchlow et al. v. Bacon, 142 Okla. 168, 285 P. 968. See, also, Colvocoresses v. Wasserman Co. (Del.) 4 Atl. 2d 800, at page 803, and authorities there cited. The testimony of Patrick O'Brien and his attorney was to the effect that they did not intend for the trust to be permanent or irrevocable, the attorney telling O'Brien that he could revoke it the next day after signing it if he desired; and was to the further effect that said agreement would not have been signed if the two had regarded it as irrevocable. While some of O'Brien's statements both previous and subsequent to his execution of the instrument as well as some of the statements attributed to his attorney by the appellants, if known to express the speakers' true beliefs, might be held to cast some doubt upon the truth of their subsequent sworn statements at the trial, yet we do not think such evidence together with the few circumstances which cast varying degrees of light upon the motives and intentions of the parties is sufficient to show that the trial court's judgment denying reformation was clearly against the weight of the evidence. To justify such extraordinary relief, a preponderance of the evidence is not sufficient. That the error in the wording of the written instrument was due to a mutual mistake of the parties must be established as a "moral certainty." See Setterstrom v. Phelan, and other cases cited, supra. Perhaps the most enlightening testimony in the record was the explanation by the attorney for the relatives of why in drawing the trust agreement he omitted the word "irrevocable" therefrom, but this falls far short of establishing as a moral certainty that Patrick O'Brien and his attorney intended that the trust should be irrevocable and that if it had been made so by the terms of said instrument creating it, said instrument would ever have been executed by Patrick O'Brien.

As we have found the judgment of the trial court neither contrary to law nor clearly against the weight of the evidence on the issues herein presented, said judgment is hereby affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, BAYLESS, and WELCH, JJ., concur.