Marvin WOMBLE and Lela Womble,
Plaintiffs in Error,

v.

Mary MAHONEY, Trustee of the Estate of
Mary T. Boone, Defendant in Error.

No. 40159.

Supreme Court of Oklahoma.

June 18, 1963.

Earl E. LeVally, Healdton, for plaintiffs in error.

John M. Poindexter, Ardmore, for defendant in error.

JOHNSON, Justice.

Prior to the time this controversy arose, the plaintiff in error, Marvin Womble, hereafter referred to as defendant, was the owner of the surface of Lots 1 and 2, Block 6, Sunrise Addition to Healdton, Carter County, Oklahoma. The defendant in error, hereafter referred to as plaintiff, was the owner of the mineral estate underlying said land.

On April 24, 1939, the defendant acquired a resale tax deed to the said premises. On June 29, 1959, his attorney wrote plaintiff the following letter:

" * * *

"Dear Mrs. Boone and Mrs. Mahoney:

"On the 24th day of February, 1955, Marty T. Boone executed unto Mary B. Mahoney a certain instrument entitled therein 'Trust Agreement' and the same was filed at Book Misc. 307, page 69 of the records of Carter County, Oklahoma. Therein, a claim was made that Mary T. Boone owned Lots 1 to 24, in Block 6, Sunrise Addition, New Healdton.

"On October 23, 1958, Mary B. Mahoney, Trustee, executed to Charles E. Brown a certain oil and gas Deed which is recorded at Book Misc. 364, page 23, of the records of Carter County, Oklahoma, which covers in addition to other lands that which is now Block 6, Sunrise Addition to New Healdton.

"My client, Marvin Womble, owns Lots 1 and 2 in Block 6, Sunrise Addition, New Healdton. There are only two lots in said Block 6. Both instruments above mentioned cloud his title thereto and constitute slander of title.

"We request that you take whatever steps are necessary, and at your expense, to clear these clouds you have caused on his title. If you fail to do so, Mr. Womble has indicated that he will

order us to file action for such purpose in the proper court. * * *"

Relying upon statements made in such letter, the plaintiff on July 7, 1959, executed and delivered without consideration a quitclaim deed to the defendant covering the hereinabove described real property.

When plaintiff discovered that she had owned the entire mineral estate under such lots, she brought this suit for cancellation of the quitclaim deed.

After the issues were joined, trial was had to the court, which cancelled the quitclaim deed. Defendant's motion for new trial was overruled, and the defendant appealed.

The contentions of the defendant are set forth in three propositions which settle down to two points: (1) The petition and amended petition were demurrable and (2) The judgment is contrary to law.

The first of these arguments is concerned only with the statute of limitations. The quitclaim deed, the cancellation of which is sought, is dated July 7, 1959. The present suit was filed July 26, 1961. It is contended that the two-year statute (12 O.S. 1961, Sec. 95, subsection 3) applies.

The record in this case contains specific statements of counsel that the recovery sought (cancellation of deed) is not based upon fraud but upon mistake upon one part and inequitable conduct on the other part. In the case of Maloy v. Smith, Okl., 341 P. 2d 912, this court said in the body of the opinion:

"* * * And the five-year statute would also be applicable if the right to recover is based upon inequitable conduct which falls short of fraud. * * *"

This suit was brought nineteen days over two years after the date of the deed. There is no evidence in the record as to when it was delivered. In any event, the action was well within the statutory period for the evidence of plaintiff's attorney, wholly uncontradicted, is: "The first time we discovered that she did own it was when I checked the title. And we immediately took action when I found out that she had done something she shouldn't have done, in my opinion."

We believe and so hold that the action is not barred by limitation. Our holding is in line with the general rule as set forth in 54 C.J.S. Limitations of Actions § 198, page 202, as follows:

"The general rule that the statute begins to run from the time the mistake is discovered, or should have been discovered, is most frequently applied in suits to correct or reform deeds and other written instruments, but it is equally applicable to suits for rescission and cancellation on the ground of mistake, and in some states, although not in others, has been applied to an action at law on that ground."

The next point to be disposed of is the effect of the tax deed purchased by the owner of the lots covered by said deed. It is definitely settled in this jurisdiction that the purchase of a tax deed by one under duty to pay the taxes adds nothing to his title. In the body of the opinion in State ex rel. Commissioners of the Land Office v. Continental Oil Company, Okl., 273 P.2d 1002, we said:

"* * * From a tax standpoint, the surface and the minerals constituted one unit. The assessment of the surface carried with it the minerals thereunder. But there was no duty on the part of plaintiff, the mineral owner, to pay the taxes. That duty rested upon the surface owner and his grantee, whether the grantee be as an owner or as a mortgagee. Further, the duty to pay the taxes was so inescapably that of the surface owner or mortgagee that if they failed to pay the taxes and allowed the property to be sold at tax sale such surface owner could never thereafter purchase the tax title to the exclusion of the former mineral owner. Colby v. Stevenson, Okl., 265 P.2d 477, and numerous cases therein cited. * * *"

■ The tax deed therefore added nothing to defendant's title, nor does it affect the outcome of this litigation in any wise.

■ Turning now to the remaining phases of the controversy, it should be borne in mind that this is not a suit for reformation of a conveyance. In such a case based upon mistake, the mistake must be a mutual one. See In re O'Brien's Trust Estate, 197 Okl. 436, 172 P.2d 607. This case involves cancellation of a deed, in which case the rule is otherwise. In 12 C.J.S. Cancellation of Instruments § 27b(2), page 978, the headnote reads:

"A unilateral mistake of fact going to the essence of the contract may be ground for equitable cancellation but not for reformation."

In the application of the rules of law to the facts in the present case, the following should be borne in mind: (1) There are no innocent purchasers involved, and (2) There was no consideration paid for this deed, so that the matter of restoring the parties to their original position is not involved.

In the case of Baas v. Zinke, 218 Mich. 552, 188 N.W. 512, it is held that the mistake of one party may be of such a character that the minds of the parties cannot be said to have met.

In Hatcher v. Union Trust Co. of Maryland, 174 Minn. 241, 219 N.W. 76, it is held that a court of equity may, in a proper case, grant relief by cancellation of an instrument on the ground of mistake of one of the parties, if it can be done without injustice to the other.

Again, in Pacific Mutual Life Ins. Co. v. Glaser, 245 Mo. 377, 150 S.W. 549, 45 L.R. A.,N.S., 222, the rule is announced that where a contract in writing is executed under a mistake by one one of the parties as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the contract as written and place the parties in status quo.

■ All of these cited cases deal only with unilateral mistake. However, the rule is much stronger where, as here, the unilateral mistake is accompanied by inequitable conduct on the part of the other party.

In 12 C.J.S. Cancellation of Instruments § 21, p. 969, the headnote reads:

"Material misrepresentations may be a ground for equitable rescission even though they were innocently made."

The text which follows this headnote is as follows:

"It seems to be the general rule that equity courts or courts exercising equitable powers will, in a proper case, rescind and cancel an agreement or instrument procured or induced by material misrepresentations or false statements despite the fact that they were made honestly with no intent to deceive. The real inquiry is not whether the party making the representation knew it to be false, but whether the other party believed it to be true, and was misled by it in making the contract; and, whether the misrepresentation is made innocently or knowingly, the effect is the same. Thus it is as conclusive a ground of relief in equity as a willful and false assertion, for it operates as a surprise and imposition on the other party; and in such case the party must be held to his representations. The mala fides of the party making the representation or his knowledge of its falsity is simply an aggravation of the situation."

This same rule is set forth in 9 C.J. Cancellation of Instruments § 23, in this wise:

"According to the weight of authority, misrepresentation of material facts, although innocently made, if acted on by the other party to his detriment will constitute a sufficient ground for rescission and cancellation in equity. The real inquiry is not whether the party making the representation knew it to be false, but whether the other party believed it to be true, and was misled by

it in making the contract; and, whether the misrepresentation is made innocently or knowingly, the effect is the same. It is as conclusive a ground of relief in equity as a willful and false assertion, for it operates as a surprise and imposition on the other party; and in such case the party must be held to his representations."

■ It is beyond question that the letter hereinabove set out contained misrepresentations, although innocently made. The mistake of the plaintiff in thinking she owned no interest in the property, coupled with the contents of defendant's attorney's letter upon which she relied, brings the case clearly within even the more strict rule authorizing cancellation where unilateral mistake is accompanied by inequitable conduct on the other side.

Judgment affirmed.