Oil and Gas Lease — Release — Reinstatement The Commissioners of the Land Office would be authorized to cancel the subject releases and, in effect, reinstate the oil and gas leases if they find and conclude from all the evidence before them that the releases were executed and delivered by reason of inadvertence and mistake. The Attorney General has received your letter and memorandum wherein you relate the following facts: "Four oil and gas leases were acquired by Tenneco Oil Company from the Department and are dated February 8, 1966. The anniversary dates would be each February 8th within the five year primary terms. The first delay rental payments were received by this office on January 10, 1967, and the second delay rental payments were received on January 10, 1968 On January 6, 1969, the Commissioners of the Land Office received releases of the oil and gas leases. Thereafter, on January 20, 1969, the Commissioners of the Land Office received the 1969 delay rentals from Tenneco together with a cover letter stating that the leases were released through error and inadvertently requesting that the leases be reinstated." You enclose a copy of one of the leases in question as Exhibit "A"; a copy of one of the releases in question, denominated Exhibit "B"; a copy of a letter from Barth P. Walker, attorney for Tenneco Oil Company, as Exhibit "C"; and a letter from Mr. Harry C. Victery, Jr., district landman for Tenneco, marked Exhibit "D". In connection with the above stated facts and exhibits, you, in effect, ask the following question: Would the Commissioners of the Land Office be authorized to cancel said releases and, in effect, reinstate the oil and gas leases if they find and conclude from all evidence before them the releases were executed and delivered by reason of inadvertence and mistake. It is true that the execution and delivery of a duly executed release carries with it a strong presumption that it was executed and delivered intentionally and with full knowledge of its contents and legal effect. A "release" is the act or writing by which some claim or interest is surrendered to another person, Standard Auto Insurance Association v. Reese, 83 Ind. App. 500, 149 N.E. 137. In the case of Matthews .v. Atchison, Topeka and S. F. Ry. Co., 129 P.2d 435, 65 Cal.App. P.2d 549, in the body of the opinion, the court said. "A `release' is a `contract' and as such is subject to rescission for the same reasons as are other contracts, including fraud and mistake of fact." It is elementary that there must be a meeting of the minds of the parties on all material parts of the agreement in order to settle a valid contract. Contracts which result from a mistake of fact are subject to rescission. In 12 C.J.S., Cancellation of Instruments, Section 27B (2), the general rule is stated thus: "Where a contract in writing is executed by only one of the parties, under a mistake as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written, and to place the parties in status quo, this being the rule whether the contract has been executed or is merely executory." The above quoted general rule is also a matter of statutory declaration in Oklahoma. See 15 O.S. 2 [15-2], 15 O.S. 51 [15-51], 15 O.S. 66 [15-66] (1961). In the case of Womble v. Mahoney, Okl., 383 P.2d 26, in the third paragraph of the syllabus, the court said: "A unilateral mistake of fact going to the essence of the contract may be ground for equitable cancellation but not for reformation." To the same effect, see the case of Watkins v. Grady County Soil and Water Con. Dist., Okl., 438 P.2d 491. It is therefore the opinion of the Attorney General that the Commissioners of the Land Office would be authorized to cancel the subject releases and, in effect, reinstate the oil and gas leases if they find and conclude from all the evidence before them that the releases were executed and delivered by reason of inadvertence and mistake. (W. J. Monroe)