SAMUEL F. RAYMOND *vs.* JESSE S. NASH.

Fairfield Co., March T., 1889.  PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

In cases of ambiguity in the description of land in a deed the practical construction placed upon it by the parties in interest for a long time is always most significant and often controlling.

Courses and distances in a description must yield to fixed monuments.

And one parcel of land may be a monument to determine the boundary and limit of another.

[Argued March 20th—decided April 8th, 1889.]

SUIT for an injunction against the obstruction of a passway by the erection of a building encroaching upon it; brought to the Court of Common Pleas in Fairfield County, and heard before *Hall, J.* Facts found and injunction granted, and appeal by the defendant. The case is fully stated in the opinion.

*H. S. Sanford,* for the appellant.

*D. F. Hollister,* for the appellee.

LOOMIS, J. This is a complaint for an injunction to prevent a threatened obstruction of a passway by the erection of a building on a portion of the same. All the facts essential to the granting of the injunction are contained in the finding of the court, and unless there was error in the legal

construction of a deed it is conceded that the judgment for the plaintiff must stand.

Both parties derived title under the same original owner, one Joseph Mott, who in three several deeds to David H. Nash, under whom the defendant claims, established and defined the passway in question, which is twelve feet wide and runs in a northerly direction from State street to John street in the city of Bridgeport. The defendant's land abuts the passway on the west side and the land of the plaintiff and that of other grantees of Mott abuts it on the easterly side. The passway, extending one hundred and forty-two feet from State street northerly, was first established by deed of Mott to David H. Nash, dated December 23d, 1853, of a lot bounded southerly on State street, seventy-five feet; easterly on the grantor's land, as a tight board fence then stood, about one hundred and forty-two feet; northerly on his own land in part and in part on land of David B. Nichols, seventy-five feet, as a tight board fence then stood; and westerly on land of the grantor, about one hundred and forty feet. The provision establishing the passway was as follows:—"And it is hereby agreed that said Nash, his heirs and assigns, shall keep open a strip of land six feet in width, on the east side of the above land, from State street, for a passway, on condition that said Mott, his heirs and assigns, shall and will keep open a strip of land six feet in width, adjoining the above strip of land from State street, for a passway, so as to make a passway twelve feet in width between them, from State street to the north line of said land; and that said passway is to be kept open forever, for the use of said Nash and Mott, their heirs and assigns forever, so that neither party shall have any right to lay down any obstruction on said passway." Afterwards, on the same day, Mott, by another deed of the same date, conveyed to Nash an additional piece of land, bounded westerly on land of David B. Nichols, twenty-five feet, southerly on land conveyed to Nash by the first deed above mentioned, about sixty-four feet, as the tight board fence then stood, easterly on the grantor's land, twenty-five feet, "by a straight

continuous line from the northeasterly corner" of the land conveyed by the first deed, and northerly on the grantor's land, about sixty-four feet. Then follows a provision establishing and defining a passway on the east side of the land under precisely the same terms and provisions as were annexed to the first deed.

There is no dispute whatever between the parties as to the construction of these two deeds, or the boundaries of the land and the location of the passway; and it is conceded that the threatened obstruction is in some part within the limits of the passway as defined in the deeds, that is, on the east side of the second piece and within the six feet to be thrown out by Nash for a passway as stated; and unless the parties by some subsequent legal arrangement have changed the passway, judgment was properly rendered for the plaintiff.

And this brings us to the precise contention in the case, which arises under a third deed from Mott to Nash, dated June 30th, 1855, conveying the remaining land of Mott lying between the land conveyed by the first deeds and John street on the north—the boundaries as given being "north sixty-eight feet on John street, west on land of David B. Nichols, one hundred and fifty-six feet, south sixty-eight feet on said Nash's land, east on my own land one hundred and fifty-six feet." Then follows a provision for a passway, using the identical language used in former deeds, except that in describing the purpose of the passway it is said, " so as to make it twelve feet in width between them from State street to John street." The deed on its face seems well enough, and the abutting owners all around on three sides, and John street on the other, are described with accuracy, but the sole ambiguity arises from the measurement of two of the side lines within the boundaries mentioned, by which we find on the east line from John street to the line of land conveyed by the second deed to Nash only one hundred and thirty-one feet, when the deed calls for one hundred and fifty-six feet, and we find on the west line only one hundred and thirty-two feet and a fraction, when the deed calls for one hundred and fifty-six feet.

It may here be remarked, although the fact is perhaps of no importance on the question of construction, that the east line of the land last conveyed is not an extension of the east line of the land conveyed previously, but it commences at a point on the south end about four feet east of that line and then runs north in the same direction to John street, making a turn of about four feet in the passway from a straight line.

Upon the sole ground that the east and west lines of the land last conveyed are long enough, as given in the deed, to embrace the entire piece conveyed by the second deed, the defendant, disregarding utterly the call of the deed to stop running his side lines when he reaches the line of Nash's land, although it was well known and never in dispute, slides the description of the third piece entirely over the second, and so convicts the parties of doing the futile and idiotic act of attempting to convey by a warranty deed that which they well knew the grantee already owned by a previous warranty deed from the same grantor.

Of course the learned counsel for the defendant does not claim that the third deed could take effect on the title already vested in Nash under the second deed, but he contends that, as to so much of the land on the east side as the grantee had agreed to keep open for a passway, (although the fee to that was already in him), the grantor retained an easement in it which he could surrender, and that the third deed could, and did, take effect on that, and so extinguished the grantor's right in that passway.

But if the object was simply to affect the passway it would have been most easy and natural to refer to the passway in terms instead of doing a most foolish and unnatural thing in giving an absolute warranty deed of the fee of the passway (which the grantor did not own), and including the fee of all the rest of the land, the title and exclusive possession of which was already in Nash and had been for about two years, without the pretense of an easement of any kind left in the grantor. The passway so thrown out by the grantee covered only a narrow ribbon of land six feet wide on the east side, and the fact that this last deed pur-

ported to extend the west line just as far as the east one was extended, so as to include all the land west of the passway, coupled with the fact that the same description bounded the third piece on the north line of the second, (for the southern boundary on land of Nash must be construed as that line,) renders it manifest that the whole trouble arises from a mistake of the scrivener as to the length of the east and west lines. But we have more certain evidence that the parties never intended to surrender any portion of the passway or change it at all, for the third deed, in addition to providing a passway on the east of the land conveyed in precisely the same manner as had been done in each prior deed, stated the object explicitly as follows:—" So as to make it " (the passway) " twelve feet in width between them, from State street to John street, and that said passway is to be kept open forever, for the use of said Nash and Mott, their heirs and assigns forever, so that neither party shall have any right to lay down any obstruction on said passway." Surely this is a strange way to give up a portion of the passway, and a strange claim to justify placing an obstruction in the passway under a deed which in terms provided that it should never be obstructed, and it is a strange thing for a deed to narrow a passway which in its terms preserves it of the uniform width of twelve feet.

But if the claim merely is that the third deed, in extending the east line, merely followed the line established by the second deed and had the effect simply to remove the burden of a passway from the six feet which by that deed Mr. Nash had bound himself to keep open, then, if we give effect to the positive provision in the third deed, it would require Mr. Nash to throw out the same six feet of land for the same purpose, leaving the passway precisely as it was before, and also leaving the defendant without any justification for his act. But suppose this position is abandoned as too absurd, and, instead, the claim is made that the east line as extended southerly over the second piece does not follow Mott's line, up to which he owns in fee, but contrary to all rules simply runs over the passway where he owns the fee on both sides,

then by the provisions of the last deed he was required to throw out six feet beyond that line on the east side, which would now require the pulling down of permanent buildings erected immediately after the last deed was given, and located, as the court finds, within eighteen inches of the east line of the passway as established by the second deed.

The grantee Nash knew this great outlay was being made on the faith of its being the true line and he looked upon this line of buildings without protest or objection for twenty-eight years, until his death in 1883. Not only did he silently acquiesce in the assumption that no change was made in the passway by the last deed, (except to extend it through to John street), but the court finds that immediately after that he built fences establishing the west line of the passway precisely where the second deed located it, including the short fence running east about four feet from the northern terminus of the east line of the second deed to the southern terminus of the east line of the last deed, making the little turn in the passway to which we have before referred.

In cases of ambiguity in the description of land in a deed, the practical construction placed upon it by the parties in interest for a long time is always most significant and often controlling. In *Reed* v. *Farr*, 35 N. York, 113, it was held that the practical location of a boundary line and acquiescence therein by the parties for more than twenty years, are conclusive of the location of the line, being proof of the correctness of the location of so controlling a nature as to preclude evidence to the contrary. See also *Watt* v. *Ganahl*, 34 Geo., 290. In *Norcom* v. *Leary*, 3 Ired. Law, 49, it was held that in questions of boundary long and notorious possession authorizes the inference of any fact which can rationally be inferred to make such possession consistent with right. *Owen* v. *Bartholomew*, 9 Pick., 520, is to the same effect.

A reference to the finding of the court will show that this practical construction and possession of all parties without exception, from the date of the deeds to the year this suit

was brought, has all been one way and overwhelmingly in favor of the plaintiff.

But this is not all, for, under the circumstances of this case, we may invoke the general rule that courses and distances must yield to fixed monuments. A tangible object, natural or artificial, is the one more commonly referred to in this connection, and is in its nature more certain than the line of another's land, and yet there is ample authority for the position that one parcel of land itself may be a monument to determine the boundary and limit of another. *Flagg* v. *Thurston*, 13 Pick., 150 ; *Carroll* v. *Norwood*, 5 Harr. & J., 163 ; *Miller* v. *Beeler*, 25 Ill., 163 ; *Sayers* v. *Lyons*, 10 Iowa, 249 ; *Smith* v. *Murphy*, 1 Tayl., 303 ; *Bates* v. *Tymason*, 13 Wend., 300 ; 2 Washb. on Real Property, 632.

We should be unwilling to apply any technical rule of construction in a manner to defeat the manifest intention of the parties, but in this case it is very clear that Nash's northern line, as established by the second deed, being undisputed and precisely identified, and comporting so well with other evidence of the intent of the parties, must control the distances.

There was no error in the judgment complained of.

In this opinion the other judges concurred.