FRANK TOWERS CORPORATION *v.* EARL E. LAVIANA ET AL.

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued May 6—decided June 9, 1953

*Robert L. Krechevsky,* with whom, on the brief, was *Robert K. Killian,* for the appellant (plaintiff).

*Robert M. Luby,* for the appellees (defendants).

BALDWIN, J. The plaintiff brought this action to recover a deposit of $5000 which it paid to the defendants on a contract for the purchase of a motel

and tourist court. The court rendered judgment for the defendants and the plaintiff has appealed.

The finding, which is not subject to correction, discloses these facts: The defendants own a motel and tourist court on North Broad Street in Meriden. On December 10, 1951, they executed a written contract to sell this property to the plaintiff, a New York corporation. The transfer of title was to be made in the office of the defendants' attorney in Meriden on or before December 31, 1951. The purchase price was $204,000. The plaintiff paid a deposit of $5000 and agreed to assume a first mortgage of $25,678.39, to pay $55,000 in cash and to execute a purchase money mortgage for the balance of $118,321.61. Taxes, interest on the first mortgage, water rates, and sewer and electric light charges were to be adjusted in cash as of the date of transfer. The contract contained a provision that the defendants "agree to convey said real estate to the [plaintiff] by a good and sufficient warranty deed in proper form duly executed . . . covering the absolute fee of the above premises free of all encumbrances," with certain exceptions not of moment in the disposition of this case. It was further stipulated in the contract that the "premises are being operated as Colonial Park Tourist Court and the operation as a motel and tourist court are in conformity with the laws of the City and Town of Meriden and the State of Connecticut." The parties agreed further that "[t]ime shall be of the essence of this contract, and in the event the [plaintiff] fails to perform the contract on its part, said sum of Five Thousand (5,000) Dollars shall be considered and held to be liquidated damages for its failure to perform."

Following the execution of the contract, an experienced title searcher made an examination of the

chain of title. At the time and place appointed for closing the contract, the plaintiff made a tender in accordance with the terms of the agreement but claimed that the title was defective because of uncertainty in the description of the southerly boundary of the premises to be conveyed, and also because there was a violation of the zoning ordinances. The plaintiff requested that the defects be corrected and suggested a postponement of the closing for thirty days. The defendants, however, insisted that the contract be consummated. Thereupon, the plaintiff demanded the return of its $5000 deposit, which the defendants refused.

The decision of the case turns upon the question whether the defects complained of were such as to justify the refusal of the plaintiff to perform its contract. The premises to be sold and conveyed were described as follows: "[C]ertain real property and personal property situated in the Town of Meriden, County of New Haven and State of Connecticut shown on 'Map of Land conveyed to Earl & Geraldine Laviana North Broad St., Meriden, Conn. May 1948. Scale 1″ – 30′. H. E. Daggett, Civil Engineer, Meriden, Connecticut' on file in the Meriden Town Clerk's Office, and bounded: Northerly by land now or formerly of Josaphat Lussier, as shown on said map, four hundred thirty-nine and one tenth (439.1) feet; Easterly on North Broad Street, as shown on said map, two hundred thirty-one and fifteen one-hundredths (231.15) feet; Southerly by land formerly of Emma C. and Albert J. Ruel, as shown on said map, more lately of Joseph LeMay, four hundred sixty-seven and three tenths (467.3) feet; and Westerly by land now or formerly of Minnie Cerute, as shown on said map, two hundred thirty-seven and five tenths (237.5) feet." There was

no question of the competency of H. E. Daggett, the engineer who made the map referred to in the description. This map shows the southerly line, which the plaintiff claims is so uncertain as to render the title defective, as extending westward from North Broad Street to a stone wall running in a northerly and southerly direction, which marked the boundary line between the property to be conveyed and land adjoining on the west owned by Minnie Cerute.

The southerly boundary line as set forth on the map corresponds with the southerly boundary line as shown on a map on file in the Meriden land records since 1893, both as to its easterly terminus, on the highway, and its westerly terminus at a stone wall. The latter map was prepared, apparently, at the behest of the heirs of Benjamin Twiss, at the time of the distribution of his estate. It shows the southerly boundary of the property as marked by a fence, and the westerly boundary, by a stone wall which separated it from the land adjoining on the west, then owned by Patrick Kinney. The map, however, gives the length of the southerly boundary line as 552.5 feet.

The named defendant acquired title from Albert J. and Emma Ruel in 1948. The length of the southerly boundary in the Ruel deed is stated to be 467.3 feet. The property is described as being bounded easterly on North Broad Street and westerly on land of Minnie Cerute, the adjoining proprietor. However, in the deed by which the Ruels acquired title from Pierre Dumas in 1941, the length of this southerly boundary is given as 252.5 feet, although the land is also described as being bounded easterly on the highway and westerly on the land of Patrick Kinney, who was then the adjoining proprietor. The plaintiff's claim is that the difference in the statement of the

length of the southerly boundary makes the title defective. The length of 252.5 feet is also given for the southerly boundary in the deed by which Dumas acquired title from P. Ethan Hull in 1901, and in the deed by which Hull acquired title from Benjamin Page, acting as a committee appointed by the Superior Court for Hartford County in a judgment rendered in 1901 in an action entitled *Fidelity Co., Conservator of Herbert M. Twiss* v. *Fannie L. Twiss et al.* In these two conveyances, however, the land is described as being bounded easterly on the highway and westerly on named proprietors, so that the easterly and westerly termini of the southerly boundary are determined by known and fixed monuments as established by the map hereinbefore referred to as on file in the Meriden land records since 1893.

It is obvious that the change from 552.5 feet, as shown on the map, to 252.5 feet, as shown in the Page, Hull and Dumas deeds, is nothing more than a scrivener's error. Irrespective of the length of the southerly boundary in feet, the controlling factor is that, in each of the deeds in the chain of title, as in the contract itself, the easterly terminus of the southerly boundary is described to be on a public highway, and the westerly terminus on the land of an adjoining proprietor, which land is separated from the land of the defendants by the stone wall appearing on both maps.

Where the boundaries of land are described by known and fixed monuments which are definite and certain, the monuments will prevail over courses and distances. *Raymond* v. *Nash*, 57 Conn. 447, 453, 18 A. 714; *Benedict* v. *Gaylord*, 11 Conn. 332, 335; *Higley* v. *Bidwell*, 9 Conn. 447, 452; *Belden* v. *Seymour*, 8 Conn. 19, 25; *Beach* v. *Whittlesey*, 73 Conn. 530,

534, 48 A. 350; Patton, Titles, § 99; 11 C.J.S. 603, § 50, 628, § 56. A highway has always been regarded as a fixed monument. *Texas Co.* v. *Slosberg,* 112 Conn. 357, 363, 152 A. 152; *Temple* v. *Benson,* 213 Mass. 128, 132, 100 N.E. 63; *Parran* v. *Wilson,* 160 Md. 604, 607, 154 A. 449. The land of an adjoining proprietor whose boundaries can be fixed by known monuments is also considered to be a monument to establish a boundary. *Raymond* v. *Nash,* supra; *Beach* v. *Whittlesey,* supra, 533; *Elliott* v. *Weed,* 44 Conn. 19, 24; Patton, op. cit., § 102. Despite the two different statements as to the length, in feet, of the southerly boundary, there is no reasonable doubt, in law or in fact, about the location of both ends of that boundary, because they are established beyond question by fixed and recognized monuments referred to in the several conveyances in the chain of title. Nor is there any doubt that the length of that boundary is at least 467.3 feet.

The other defect alleged by the plaintiff is a claimed violation of the zoning ordinance of the city of Meriden. The defendants' property is in a general residence zone. In May, 1948, the zoning board of appeals of Meriden, by a unanimous vote, granted to the named defendant a variance to erect twelve cabins and a restaurant on the premises. A building permit was issued for the erection of twelve cabins. The defendant caused to be built four three-room cabins, with temporary interior walls. Later, upon his application, the necessary permits were issued to erect a boiler room, to extend and join the existing cabins, thus increasing the number of rooms, and to erect four additional cabins. At the time the parties entered into their contract, there were eight separate buildings, with a boiler room and an office, on the premises. No appeal had been taken from the grant-

ing of the original variance or from the issuance of any of the building permits. The premises are located on route 5. We take judicial notice of the fact that this is the main highway between New Haven and Hartford and is heavily traveled. The land in the vicinity is devoted to commercial use to a considerable extent.

The defendants agreed to convey the "absolute fee" of the premises described in the contract "by a good and sufficient warranty deed . . . free of all encumbrances." The term "absolute fee" is synonymous with "fee simple" and means a whole or unlimited estate. *In re O'Brien's Trust Estate,* 197 Okla. 436, 438, 172 P.2d 607; *Watson* v. *Dalton,* 146 Neb. 78, 92, 20 N.W.2d 610; *McGlothlin* v. *McElvain,* 407 Ill. 142, 148, 95 N.E.2d 68; *United States* v. *Sunset Cemetery Co.,* 132 F.2d 163, 164; *Parker* v. *Conrad,* 74 Kan. 111, 112, 85 P. 810; *Seton* v. *New York,* 130 App. Div. 148, 154, 114 N.Y.S. 565; 31 C.J.S. 18. An agreement to convey by a good and sufficient warranty deed free of all incumbrances is an undertaking to convey a marketable title. *Perkins* v. *August,* 109 Conn. 452, 455, 146 A. 831; *Deem* v. *Miller,* 303 Ill. 240, 246, 135 N.E. 396; note, 57 A.L.R. 1253, 1274, and cases cited; 55 Am. Jur. 639; Patton, Titles, § 30. A marketable title is one that can be sold "at a fair price to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money." *Perkins* v. *August,* supra, 456; Maupin, Marketable Title to Real Estate (3d Ed.) p. 769; Patton, op. cit., § 29. A title is not unmarketable because the vendee is unwilling to accept it or because it is unsatisfactory to his attorney. 55 Am.Jur. 621; note, 57 A.L.R. 1288 and cases cited. It must be subject to more than suspicion. To render a title unmarketable, the defect must present a real and substantial

probability of litigation or loss. *Perkins* v. *August,* supra; note, 57 A.L.R. 1297 and cases cited; see *Reed* v. *Stevens,* 93 Conn. 659, 664, 107 A. 495. Where a party refuses to accept a conveyance because of a claimed defect in the title, it is not the function of the court to try the title, but rather to determine whether it is free from reasonable doubt, in law or in fact. *Shonsey* v. *Clayton,* 107 Neb. 695, 700, 187 N.W. 113. In exercising this function, some latitude must be given to judicial discretion.

The known and fixed monuments marking the southerly boundary of the property to be conveyed leave no doubt as to its location and termini and preclude the probability that a valid claim will be made to disturb it. The actions of the board of zoning appeals and the building inspector of Meriden, the one in granting the variance, the other in issuing the permits, without an appeal in either case, as well as the location of the premises on a heavily traveled highway in an area where the land is considerably devoted to business enterprises, make it highly improbable that any question would ever be raised concerning noncompliance with zoning or building regulations. The plaintiff's apprehension that some difficulty might arise in the future in connection with the location of the southerly boundary, or with zoning and building requirements, was without any substantial foundation. The court was correct in concluding that the title was marketable and that the plaintiff was not justified in refusing to accept it.

There is no merit to the plaintiff's claim that the defendants cannot retain the $5000 deposit as damages without offering evidence of damage. The contract specifically provides that "said sum . . . shall be considered and held to be liquidated damages for [the plaintiff's] failure to perform."

54

*Ritucci* v. *Brandt,* 134 Conn. 364, 366, 57 A.2d 728.
   There is no error.
   In this opinion the other judges concurred.