SHEILA J. VELSMID ET AL. *v.* JEANNE R. NELSON

LOISELLE, BOGDANSKI, LONGO, HEALEY and PARSKEY, Js.

---

222

Argued February 14—decision released May 30, 1978

*Pasquale Young*, with whom, on the brief, was *Patrick B. Dorsey*, for the appellants (plaintiffs).

*Robert Farr*, for the appellee (defendant).

LOISELLE, J. The plaintiffs brought this action in trespass, seeking damages and an injunction requiring the defendant to remove her garage from land allegedly belonging to them. The defendant denied the allegation that her garage was located upon the plaintiffs' property and pleaded, by way of special defense, that she had acquired title to the disputed property through adverse possession. The court, without reaching the issue of adverse possession, concluded that the plaintiffs had failed to sustain their burden of proving the location of the disputed boundary line, and that they had failed to prove that the defendant's garage was an encroachment upon their property. From this judgment, the plaintiffs have appealed.

The pertinent facts as found by the court are as follows: The parties are owners of contiguous parcels of land in Westbrook. Both parcels of land were owned at one time by Florence H. Warner.

The defendant acquired title to her property in 1963 from Raymond and Anna Mount, while the plaintiffs purchased theirs from Florence Warner in 1966. Since their acquisition of the property, the plaintiffs have paid all taxes on what they believed to be their property, including that portion occupied by the defendant's garage.

The disputed boundary line is the westerly boundary of the plaintiffs' land which is also the easterly boundary of the defendant's land. To establish their claim, the plaintiffs called as a witness Milton I. Ross, Jr., a licensed land surveyor, who had surveyed and prepared a map of the plaintiffs' land. As part of his survey, Ross consulted the deeds of both parties' parcels of land, as well as state highway maps and deeds, and he made field observations, seeking out the location of surveying pins designated in the deeds. The final survey purported to show that the defendant's garage encroached upon the plaintiffs' land.

The defendant did not offer the testimony of a land surveyor or engineer to contradict Ross' opinion. Paul Kaye, a surveyor, was called by the defendant, but he testified that he was unprepared to give testimony relevant to the issue in dispute. Thomas H. Fanning, an attorney primarily engaged in real estate law, testified for the defendant. His title searches of both properties revealed that the disputed boundary line runs continuously in a northwesterly direction, a fact in accord with Ross' survey. Fanning testified, however, that the Ross survey was in error in that (a) it failed to show a break in the disputed boundary line with the line changing its direction slightly, and (b) the frontage reflected on the survey was off by fifteen feet, thus placing the disputed line fifteen feet from where

it should have been located. On the basis of Fanning's testimony, the court concluded both that the plaintiffs failed to establish the disputed line and that they failed to prove that the defendant's garage encroached upon their property.

"Title is an essential element in a plaintiff's case, where an injunction is sought to restrain a trespass. *McNamara* v. *Watertown,* 100 Conn. 575, 579, 124 A. 244. The burden is on the plaintiff to locate the boundary line. *Simmons* v. *Addis,* 141 Conn. 738, 741, 110 A.2d 457." *Barrs* v. *Zukowski,* 148 Conn. 158, 164–65, 169 A.2d 23. A plaintiff's claim may fail simply as a result of his or her inability to establish adequately the disputed boundary line. See, e.g., *LaFreniere* v. *Gallinas,* 148 Conn. 660, 174 A.2d 46; *Barrs* v. *Zukowski,* supra; *Ball* v. *Branford,* 142 Conn. 13, 110 A.2d 459.

In the present case, the court concluded that the plaintiffs failed to sustain their burden of proof in establishing the disputed boundary line. Such a negative conclusion is necessarily not based upon the subordinate facts. If it had been, our determination would have been limited to whether those facts supported it, and whether the law was properly applied. See, e.g., *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503, 510, 280 A.2d 877. The conclusion is, however, reviewable and may be successfully attacked if the record reasonably discloses that the court applied an erroneous principle of law in evaluating the evidence or relied on matters not in evidence or not properly in evidence as a basis for its conclusions. *Norwalk* v. *Trombetta,* 137 Conn. 318, 319–20, 77 A.2d 77. The two findings which unquestionably provided the basis for the trial court's conclusion are: "Fanning testified that the Ross survey was in error and that it failed to

show a break in the disputed boundary line with the line changing its direction slightly" and "Fanning, in addition, testified that the Ross survey was in error in that the frontage reflected on the survey was off by fifteen feet thus placing the disputed boundary line fifteen feet from where it should have actually been located."

This court has repeatedly stated that it is the function of a finding to state facts and not evidence. Practice Book, 1963, § 619; *Carpenter Co.* v. *Richardson*, 118 Conn. 322, 324, 172 A. 226; *C.I.T. Corporation* v. *Cohen*, 117 Conn. 159, 161, 167 A. 102; Maltbie, Conn. App. Proc. § 134. A finding that certain testimony was given does not establish the truth of the facts testified to. *C.I.T. Corporation* v. *Cohen*, supra; Maltbie, Conn. App. Proc. § 135. Thus the findings, which reveal the content of Fanning's testimony, do not provide adequate factual basis for the court's conclusion. Nonetheless, in the present case, it is evident that the court credited those statements, in essence finding that the survey conducted by the plaintiffs' expert was erroneous in that it (a) failed to show a break in the disputed line and (b) was off by fifteen feet. For the purposes of this opinion, we will consider these as facts so as to determine whether the court applied an erroneous principle of law or relied on matters not in evidence to support the conclusions reached. All exhibits were made part of the finding. Therefore, in addition to the facts found and considered, the exhibits were examined to determine the court's rationale in arriving at its conclusions.

The deed for the defendant's property, which was relied upon by Ross in his survey, demarcates the disputed boundary line as follows: "thence North-

erly to Westerly along land of said Warner, a distance of 150 feet, more or less, to a point marked by an iron pipe; thence Northwesterly and still along land of said Warner, a distance of 150 feet, more or less, to a point marked by an iron pipe; then continuing Northwesterly and still along land of Warner, a further distance of 100 feet, more or less, to an iron pipe; then at right angle." The survey map prepared by Ross indicates as the boundary a straight line running northwesterly, through the defendant's garage. Of the three iron pipes designated in the property description, only the first was recovered. The defendant argues that Fanning testified that the deed notation revealing three iron pipes indicates a jog in the direction of the line. The appendix to the plaintiffs' brief reveals, however, that Fanning also testified that the deed reveals no eastward turn in the boundary line, that he did not make a survey, but only searched the title, and that quite often the distances and descriptions in deeds do not conform with what a survey will later show. The court itself found that "[t]he testimony of Attorney Fanning agreed with Mr. Ross' survey that the disputed boundary line runs in a northwesterly direction at all times." We cannot say that the evidence adequately supports a finding that the survey was in error in failing to show a break in the boundary line. Indeed, the court's further finding that both experts agreed that the disputed boundary line runs "in a northwesterly direction at all times" would appear to contradict this fact.

The court's reliance on Fanning's testimony that the survey was in error by virtue of the boundary line's placement some fifteen feet from where it should have been according to the deeds was also

in error in that it was based upon an erroneous conception of the pertinent law. The deed to the defendant's property reveals that the southerly border of the property runs thirty feet across before meeting the southerly border of the plaintiffs' property. In preparing his survey, Ross began his measurement at the southwesterly corner of the defendant's property, measuring the specified thirty feet across, before turning upwards to measure the boundary now in dispute. As a result of this approach, the southerly border of the plaintiffs' property measured longer on the survey map than in the deed description of the plaintiffs' property. This fact alone does not, however, support a conclusion that the survey was in error in placing the boundary line some fifteen feet off. Where the length of a piece of property determined by a survey is at variance with the length called for in a deed, "it is not to be presumed that the variance was caused from a defective survey in any part, but it must be presumed, in the absence of circumstances showing the contrary, that it arose from imperfect measurements of the whole line . . . [as denoted in the deed]." 2 Ballard, Law of Real Property § 506. As this court has stated, "[w]here the boundaries of land are described by known and fixed monuments which are definite and certain, the monuments will prevail over courses and distances." *Frank Towers Corporation* v. *Laviana,* 140 Conn. 45, 50, 97 A.2d 567. In the present case, neither the findings nor the exhibits indicate that Ross erred in relying on the westerly boundary of the defendant's property as a starting point for his survey. "The land of an adjoining proprietor whose boundaries can be fixed by known monuments is also considered to be a monument to establish a

boundary." Id., 51; see also *Raymond* v. *Nash,* 57 Conn. 447, 453, 18 A. 714. Further, the survey map as well as Ross' testimony reveals that by such measurement, an iron pipe was found to mark the disputed boundary. Consequently, the record offers no support for the court's conclusion that the survey placed the boundary line fifteen feet from where it should have been.

We conclude, therefore, that the court's ultimate conclusion that the plaintiffs failed to sustain their burden of proof in establishing the disputed boundary is based upon matters not in the finding or in the exhibits which were a part of the finding, as well as on erroneous principles of law. It is true that the trial court is privileged to adopt whatever testimony it reasonably believes to be credible; *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58; *Branford Sewer Authority* v. *Williams,* 159 Conn. 421, 424–25, 270 A.2d 546; and that the trial court could have simply not credited evidence supportive of the Ross survey. In this case, however, the findings indicate that the court based its conclusion on the testimony of Fanning. Aside from the fact that the findings revealing this testimony did not establish as fact its content, the content of that testimony did not establish the invalidity of the survey.

A review of the memorandum of decision, to which we may refer to better understand the court's reasoning; *Lambrakos* v. *Carson,* 174 Conn. 482, 485, 391 A.2d 142; *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 140, 139 A.2d 601; further reveals that the court, in part, based its conclusion on the belief that Fanning's testimony established that title to the land upon which the defendant's garage stands has been at all times in

the defendant. The testimony of one who has done a complete title search does not, however, generally establish title. As this court stated in *New Canaan Country School, Inc.* v. *Rayward,* 144 Conn. 637, 640, 136 A.2d 742, "[w]here the issue of title or ownership is directly involved, the proper way to prove title is by the production of the original documents or certified copies from the record." This is so unless a sufficient foundation is laid for the production of secondary evidence. *Curtin* v. *Franchetti,* 156 Conn. 387, 390, 242 A.2d 725; 29 Am. Jur. 2d, Evidence, § 476. In any case, a party can obtain an adjudication of title in himself only on the strength of his own title or interest as distinguished from the weakness of the title or interest of his adversaries. *Loewenberg* v. *Wallace,* 147 Conn. 689, 698, 166 A.2d 150; *Parsons* v. *Brown,* 136 Conn. 376, 71 A.2d 559.

As the court's ultimate conclusion that the plaintiffs had failed to sustain their burden of proof was based upon an erroneous application of law, the judgment cannot be supported. Both the finding and the memorandum of decision reveal that the court did not consider the special defense of adverse possession.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.