[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED DECEMBER 19, 1995
I. Introduction
This is an appeal from the approval of a special permit by the defendant Glastonbury Town Planning and Zoning Commission (TPZ). Under the terms of the special permit, the defendants George and Mary Ferrando are authorized to create a rear lot abutting the property owned by the plaintiff, John Catania. Access to the rear lot will be via an easement in favor of the Ferrandos over the plaintiff's property.
The plaintiff makes three claims in this appeal. The first is that approval of the rear lot is effectively the approval of an illegal resubdivision, and therefore barred by the applicable Glastonbury zoning regulations. The second is that the easement in favor of the Ferrandos is not "perpetual and indefeasible" as required by the regulations governing access to rear lots. Finally, the plaintiff argues that the TPZ erred by reconsidering what the plaintiff claims to be the identical application previously denied by the Commission.
II. Facts
Although this case arises out of a tangled procedural and factual history, the basic facts shaping this appeal are not disputed. In October, 1994, the Ferrandos applied to the TPZ for a rear lot special permit and a one lot subdivision for the purpose of creating a one lot subdivision at the rear of their property. The land owned by the defendants was previously owned by Mr. Ferrando's father. In 1947 the elder Ferrando conveyed a portion of his property to his daughter and son-in-law (the Manfredis). Subsequently, the balance of the father's property was conveyed to the defendants such that the Manfredi and Ferrando families are abutting landowners.
Both parcels, known as 1137 and 1143 Main Street, are the sites of the Ferrando and Manfredi residences and are served by a common driveway which leads to both properties and to a garage that prior to 1960 was used and occupied by the Manfredi family but actually located on the Ferrando property. In 1960 the defendants conveyed to the Manfredi family a small, landlocked parcel containing the garage. This conveyance shifted the boundary of the abutting lots with the garage parcel becoming a part of the lot known as 1143 Main Street.
In 1986 two developers, operating under the name of Red Hill Development Corporation (RHDC), purchased the rear portion of the Ferrando property for the purpose of creating a subdivision. The Ferrandos retained seven acres for themselves. As part of the transaction with RHDC, RHDC conveyed back to the defendants an easement providing access from the new subdivision to a future rear lot in the Ferrandos' remaining seven acres. The plaintiff's property is located on a portion of the property conveyed to RHDC by the Ferrandos, and is subject to the easement providing the defendants with a right of way to the lot they now seek to develop.
In April, 1994, the defendants applied to the TPZ for a rear lot special permit. Because of the previous sale to RHDC, the Ferrandos concluded that the proposed rear lot would constitute a CT Page 14596 subdivision within the meaning of the Glastonbury Regulations and therefore also simultaneously applied for a permit for a one lot subdivision.
By a vote of 3-3 the TPZ failed to approve the Ferrando application. One of the reasons for the Commission's decision was the Commission's concern that access to the rear lot ought to be through Main Street rather than through Red Hill and across the reserved easement area. Following this suggestion, the Ferrandos then made application to Glastonbury Inland and Wetlands Agency (Wetlands Agency) for approval to access the rear lot from Main Street through a regulated wetland area. The Wetlands Agency rejected the Ferrandos' application. They then again applied to the TPZ for permission for a rear lot special permit and one lot subdivision approval. After receipt of extensive evidence, including two opinions by the Town Attorney that the rear lot division of the Ferrando property constitutes a subdivision, and not a re-subdivision as argued by the plaintiff, the TPZ granted the rear lot special permit and approval for a one lot subdivision. This appeal followed.
III. Standard of Review
"It is axiomatic that a planning commission, in passing on a subdivision [and special permit] application, acts in an administrative capacity and is limited to determining whether the plan complies with applicable regulations. It is equally axiomatic that the trial court, in reviewing the action of a planning commission . . . may not substitute its judgment for that of the planning commission." R.B. Kent Son v. PlanningCommission, 21 Conn. App. 370, 373 (1990). "The decision of the Commission is reviewed in light of the record developed before it. It is enough to point out the reasonableness of the conclusions arrived at . . . the essential question, in any case, is whether the [commission's decision] is reasonably supported. Courts do not substitute their own judgment for that of the Commission so long as an honest judgment has been reasonably and fairly exercised after a full hearing." Westport v. Norwalk,167 Conn. 151, 161 (1974) (internal quotations and citations omitted). "[T]he court may grant relief on appeal only where the local authority has acted illegally or arbitrarily or has abused its discretion." Frito-Lay, Inc. v. Planning Zoning Commission,206 Conn. 554 (1988).
IV. Aggrievement CT Page 14597
The evidence demonstrates that the plaintiff is the owner of the property abutting the defendant. Accordingly, the plaintiff is statutorily aggrieved. Bossert Corp. v. Norwalk, 157 Conn. 279
(1968).
V. Discussion
 A.
The plaintiff's first claim is that the Glastonbury Zoning Regulations prohibit the creation of a rear lot out of an existing subdivision. Because, according to the plaintiff, the Ferrandos had effectively created a subdivision by virtue of their 1960 and 1986 conveyances, the TPZ is barred from approving the Ferrandos' application for rear lot approval. This argument is based on the following sub-arguments: (1) a subdivision within the meaning of the Glastonbury Zoning Regulations was created, but never approved, when the Ferrandos divided the parcel originally conveyed to them by the elder Ferrando into three lots; (2) the Ferrando conveyance to the Manfredis of the parcel containing the garage created one of the three lots necessary for the creation of a subdivision; and (3) because the 1960 and 1986 conveyances created three lots and therefore a de facto subdivision, the TPZ's approval of the rear lot application constituted a resubdivision.
Glastonbury Building Zone Reg. 6.8.3 provides:
 RESUBDIVISION LIMITATION: A § 6.8 Special Permit shall not be granted in conjunction with any rear lot created by the resubdivision of any lot(s) which are part of any subdivision approved after the effective date of this ordinance.
General Statutes § 8-18 and § 2.23 define resubdivision as follows:
 a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use, or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval CT Page 14598 or recording of such map.
Finally, § 2.20 of the Town of Glastonbury Subdivision Regulations defines "subdivision" as:
 . . . the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development . . .
The plaintiff's argument is grounded on the claim that the conveyances by the Ferrandos created three lots and therefore a subdivision within the meaning of the Glastonbury Zoning Regulations. If the plaintiff cannot establish that predicate fact, the balance of his claim must necessarily fail. We therefore turn now to that part of his argument.
Under § 2.20 of the Glastonbury Zoning Regulations a subdivision can only be created when a parcel of land is divided into three or more parcels for the purpose of sale or building development. This requires "two cuts" or two conveyances. It is undisputed that the 1986 conveyance to RHDC constitutes a division of the Ferrando property for the purpose of sale or development. The disputed issue in this case is whether the 1960 conveyance by the Ferrandos to the Manfredi family of the garage and the contiguous land was a division for the purpose of' sale or development. The defendant Commission concluded it was not. That decision is amply supported by the evidence.
The Commission had before it evidence that the conveyance of the garage and parcel was between two siblings for the purpose of conveying to the Manfredi family a garage utilized by the Manfredis, but located on the Ferrando property. This view was confirmed by the opinion of the Town Attorney whose review of the land records indicated that the garage was conveyed with the property and for the express purpose of adjusting the boundaries of the siblings to reflect their actual use of the property and garage. The plaintiff has not pointed to any evidence indicating that the conveyance was for "the purpose of sale or building development." Indeed, the record is devoid of any evidence suggesting that sale or development was the reason for the conveyance. The Commission's conclusion on this issue is supported by substantial evidence. Feinson v. ConservationCommission, 180 Conn. 421, 425 (1980). Accordingly, the defendant CT Page 14599 Commission was justified in rejecting the plaintiff's claim that the approval of the rear lot application constituted a resubdivision.
 B.
The plaintiff next argues that the defendants failed to comply with the condition that the owners of a rear lot own a perpetual, indefeasible interest in a right of way providing access to the rear lot. The plaintiff claims that the Ferrandos' easement across the plaintiff's property is subordinate to preexisting drainage and sewer easements in favor of the Town of Glastonbury, and therefore, is neither perpetual nor indefeasible.
Section 6.8.4 of the Glastonbury Zoning Regulations provides: "Except as provided in § 6.8.4.i. the owner(s) of each rear lot or lots shall own a perpetual, indefeasible interest in a right-of-way at least 20 feet wide . . ." As part of the transaction with RHDC in which the Ferrandos conveyed seven acres to it, RHDC conveyed back to the Ferrandos an easement. As stated in the deed, the easement contains language reciting warrants and covenants that RHDC owned the land and was conveying an indefeasible estate. The express language of the deed clearly binds the grantor (RHDC) and its successors and assigns to the terms of the easement. In short, RHDC conveyed to the Ferrandos a fee simple interest.
The plaintiff argues that notwithstanding the fee simple interest conveyed to the Ferrandos, the easement is not perpetual and indefeasible because of the Town of Glastonbury's preexisting drainage and sewer interest in the identical location conveyed to the Ferrandos. As the plaintiff correctly notes, there appears to be no Connecticut cases defining perpetual and indefeasible. Black's Law Dictionary defines perpetual as "never ending." Indefeasible is defined as, "[t]hat which cannot be defeated, revoked or made void." The RHDC conveyance of a fee simple interest, by its terms, is the conveyance of a never ending interest which cannot be revoked. "The term `absolute fee' is synonymous with `fee simple' and means whole or unlimited estate." Frank Towers Corporation v. Laviana, 140 Conn. 45, 52
(1953). The defendant's claim that the preexisting sewer and drainage easements in favor of the Town of Glastonbury renders the Ferrando easement either non-perpetual or defeasible is neither supported by the record nor consistent with the plain CT Page 14600 meaning of those terms.
While the defendant is correct that the Ferrandos do not haveexclusive use of the easement, it does not follow that their interest — although shared with the Town — is not perpetual or voidable. Having received a fee simple interest in the easement, the Ferrandos' and their successors' interest in it is perpetual. It is also indefeasible since no event can occur that would divest the Ferrandos of their ownership interest in the property.Id. The TPZ did not err when it concluded that the Ferrando easement satisfied the requirements of § 6.8.4 of the Glastonbury Zoning Regulations.
The plaintiff's last claim is that the defendant Commission erred by granting the Ferrandos' application after having previously rejected it. The facts giving rise to this argument are essentially uncontested. In April, 1994 the Ferrandos filed their initial application with the Commission. In August, 1994, by a 3-3 vote the Commission failed to approve it. The record discloses that one of the principal factors considered and relied upon by the Commission was the possibility that access to the rear lot could be obtained from an entrance on Main Street, rather than from the Red Hill subdivision. In response to the defendant's August decision, the Ferrandos applied to the Glastonbury Inland Wetlands and Watercourses Agency for permission to access the rear lot from Main Street. That agency's approval was necessary because such an entrance would affect protected wetlands areas. The Wetlands agency rejected the Ferrandos' application in September 1994. In October 1994, the Ferrandos again submitted applications to the TPZ Commission. Those applications were, of course, ultimately approved, and are the subject of this appeal.
Relying on Consiglio v. Board of Zoning Appeals,153 Conn. 433, 438 (1966), the plaintiff argues that the second application to the Board should have been denied in the absence of a material change of circumstances. In Consiglio, the Court indicated that the following rule should govern the consideration of similar prior applications:
 The case comes clearly within the established law or this state which prohibits a zoning board of appeals from reversing its previous decision unless the facts and circumstances which actuated the decision are shown to have so changed as to vitiate CT Page 14601 or materially affect the reason which produced and supported it and no vested rights have intervened.
Id., 438.
Whether there has been a material change of circumstances is a matter which is entrusted to the sound discretion of the agency. Fuller, 9 Connecticut Practice Series, Land Use Law andPractice, § 9.6. In this matter, the Commission failed to approve the application because of the suggestion by the neighbors, including the plaintiff, that the entrance to the rear lot be located on Main Street and not through the Red Hill property. Acceding to that suggestion, the Ferrandos made application to the Inland Wetlands Commission for permission to construct the entrance through Main Street and across a regulated wetland area. The Wetlands Commission rejected the Ferrandos' application. Having unsuccessfully attempted to address the defendant Commission's concerns, it would be anomalous to conclude that the Ferrandos should now be barred from returning to the TPZ. Such a conclusion would create a Catch-22 in which an applicant, whose original request is in effect deferred in order for the applicant to accommodate a planning and zoning commission's concerns, would be prohibited from having the application considered on its merits when the efforts to address those concerns are unsuccessful. The defendant Commission did not abuse its discretion in considering the Ferrandos' second application. Frito-Lay, Inc. v. Planning Zoning.
For the foregoing reasons, the plaintiff's appeal is dismissed.