[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
STATEMENT OF THE CASE:
The plaintiffs, Randal D. Mackie and Joanna Mackie, are the owners of a parcel of land located at and known as 307 Bantam Lake Road in the town of CT Page 1438 Morris. The defendants are Richard A. and Catherine A. Hull of 301 Bantam Lake Road, in Morris, prior owners of the plaintiffs' property and National Bank Mortgage Corp., successor mortgagee of the plaintiffs' property at 307 Bantam Lake Road.
In this action, the plaintiffs seek: (1) a determination of the common boundary line between their property and that of the defendants, each side asserting a different line; (2) to quiet title to the disputed area, being the land lying between the two disputed boundary lines; and (3) a permanent injunction prohibiting and restraining defendants from entering onto the disputed area.
The defendants claim by way of special defense that they are the owners of the disputed area or, in the alternative, claim this area by: (1) adverse possession; (2) prescriptive easement; or (3) a right of way pursuant to General Statutes § 13a-55.
FINDINGS OF FACT:
1) The plaintiffs acquired the property at 307 Bantam Lake Road, Morris, Connecticut by warranty deed (the "Beaudoin deed") dated May 23, 1991, and recorded May 24, 1991, from Charles J. and Patricia A. Beaudoin ("Beaudoin").
The description of the parcel (the "property") conveyed is as follows:
 Beginning at a point in the westerly line of said highway, which marks the northeasterly corner of land of Richard A. Hull, et ux, and running thence westerly in the southerly line of an abandoned highway 730 feet +/- to a point at the southeasterly corner of land of Leonard J. Rothman, et ux; thence northerly along land of said Rothman, et ux, 195.5 feet +/- to a point in the southerly line of land of Michael Somma, et ux; thence along land of said Somma, et ux, 480 feet +/- to the northwesterly corner of land of Charles J. Beaudoin, et al; thence southerly along land of said Beaudoin, et al, 150 feet +/- to a point; thence easterly along the southerly line of land of said Beaudoin, et al, 267 feet +/- to a point in the westerly line of said highway; thence southerly along said highway, 35 feet +/- to the point and place of beginning.
 Being the same premises conveyed to Charles J. Beaudoin and Patricia A. Beaudoin from Richard A. Hull CT Page 1439 by Warranty Survivorship Deed dated December 30, 1987 and recorded December 31, 1997 in Volume 49, Page 843 of the Morris Land Records.
2) Beaudoin acquired the property by warranty deed dated December 30, 1987, and recorded December 31, 1987, from defendant Richard A. Hull (the "Richard Hull deed").
3) Defendant Catherine A. Hull conveyed her interest in the property to Richard A. Hull by quit claim deed dated May 18, 1985, and recorded May 24, 1985 (the "Catherine Hull deed").
4) Defendants Catherine A. and Richard A. Hull acquired the property by warranty deed dated April 17, 1984, and recorded May 1, 1984, from David W. Gardiner ("Gardiner") (the "Gardiner deed").
5) The property descriptions in the Beaudoin deed, the Richard Hull deed and the Catherine Hull deed and the Gardiner deed (the "southerly line boundary deeds") all refer to the southerly boundary of the property as "the southerly line of an abandoned highway".
6) The defendants, prior to the conveyance to Beaudoin, had title to the entire abandoned highway (the "abandoned highway") as set out in the Gardiner deed, the warranty deed from Charles E., Jr. and Martin K. LeSan, dated August 25, 1977, and recorded August 22, 1977, (the "LeSan deed") and the quit claim deed from Marion K. LeSan to the defendants dated July 7, 1985, and recorded August 14, 1985 (the "LeSan quit claim deed").
7) The abandoned highway was discontinued by the town of Morris at a town meeting on October 1, 1923.
8) The defendants did not question or dispute the description of the property in the Gardiner deed, the Richard Hull deed, the Catherine Hull deed, and the Beaudoin deed.
Defendants argue that there are conflicting calls in the southerly line boundary deeds in that the closing distance call of 35 feet more or less is not adequate to close the easterly boundary at the southerly line of the abandoned highway but sets the southerly line of the property at the centerline of the abandoned highway. The question for the court is which of the calls in the deed control the distance: 35 feet more or less or the adjoinder to the terminus at the southerly line of the abandoned highway.
The law on this question is clear: known and fixed monuments will CT Page 1440 control over courses and distances. Frank Towers v. Laviana, 140 Conn. 45,50 (1953). "The words `more or less', when related to the description of the property in a deed, are . . . words of precaution and safety. . . .[If] calls for distance that are qualified by words relieving exactness also call for a monument or adjoinder as a terminus . . . [they] render the qualifying words meaningless. 23 Am.Jur.2d 279-80, Deeds § 308 (1983). "[T]he physical disappearance of a monument does not terminate its status as a boundary marker, provided that its former location can be ascertained through extrinsic evidence." Koennicke v. Maiorano,43 Conn. App. 1, 12 (1996). "A highway has always been regarded as a fixed monument." Frank Towers Corp. v. Laviana, supra, 140 Conn. 51. There is no reasonable doubt, in law or in fact, concerning the location of the southerly boundary of the abandoned highway.
DISCUSSION:
In order to address the conflicting claims of the parties in a systematic fashion, the court will first address the issue of the respective title claims advanced by the parties. The plaintiffs rely on the property description contained in the Mackie deed, the Beaudoin deed, the Richard Hull deed, the Catherine Hull deed, and the Gardiner deed to support their position that the southerly boundary of the property is the southerly line of the abandoned highway. The defendants argue that these four southerly boundary deeds contain a scrivener's error as to the southerly boundary of the property and that the correct southerly boundary of the property is the center line of the abandoned highway.
 I
The purpose of a property description is to specify the subject of the conveyance. "In order to be adequate, a property description must contain a sufficiently full and certain depiction of the land so as to afford a means of identifying the property which will distinguish it, from all other." 14 R. Powell, Real Property § 81A.05[1]. Each of the deeds relied upon by the plaintiffs is clear and unambiguous on its face. "When determining a boundary line in a deed, if the description in the deed is clear and unambiguous, it must be given effect." McCullough v. WaterfrontAssociation, Inc., 32 Conn. App. 746, 750, cert. denied, 227 Conn. 933
(1993). "In such a case, there is no room for construction. The inquiry is not the intent of the parties but the intent expressed in the deed."Koennicke v. Maiorano, supra, 43 Conn. App. 10; see also McCullough v.Waterford Park Association, supra, 750.
The sequence of deeds starting with the 1984 Gardiner deed describe the southerly boundary of the property as being along the "southerly line of CT Page 1441 an abandoned highway". The court should not and will not read an ambiguity into a deed. It is not the province of the court to interpret what has no need of interpretation. The deeds speak for themselves. They are clear and unambiguous and should be given the effect that their language requires. The defendants argue that the calls in the description of the property in the deeds should be questioned based on certain relations to other lands that adjoin the property. As set out in the findings of fact above, the defendants owned the entire abandoned highway prior to the 1987 transfer to Beaudoin. There is no reservation of any right to any portion of the abandoned highway referenced in the Richard Hull deed. The Richard Hull deed is clear on its face. The defendants argue that the parties to the Richard Hull deed really intended that the southerly boundary of the property be the centerline of the abandoned highway.
 II
The defendants argue that the intent of the parties in the Richard Hull deed was to convey property bounded by the centerline of the abandoned highway. The defendants would have the court reform the clear language of the Richard Hull deed and further have that reformation apply to the Beaudoin deed, the Catherine Hull deed and the Gardiner deed. The defendants argue that the parties to the Richard Hull deed had intended to establish the southerly boundary of the property at the centerline of the abandoned highway. "A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result ofmutual mistake, or mistake of one party coupled with actual orconstructive fraud, or inequitable conduct on the part of the other. . . .We have held that this also applies to actions for reformation of a deed." (Emphasis added; citations omitted.) Lopinto v. Haines,185 Conn. 527, 531-32 (1981). "A court, in the exercise of its power to reform [an instrument] must act with the utmost caution and can only grant the relief requested if the prayer for reformation is supported by [evidence that is clear, substantial and convincing]." GreenwichContracting Co., Inc. v. Bonwit Construction Co., Inc., 156 Conn. 123,126-27 (1968); Corticelli Silk Co. v. Slosberg, 101 Conn. 44, 50 (1924).
The court does not find that the defendants have established by clear, substantial and convincing evidence that the intent of the parties to the Richard Hull deed was to set the southerly boundary at the centerline of the abandoned highway. Further, to effect the other southerly line property deeds with some unexpressed intent different from the clear language set forth in the deeds would be devastating to the system of land records upon which Connecticut's property rights are based. See CT Page 1442Wilson v. DeGenaro, 36 Conn. Sup. 200, 207 (1979); Ashley Realty Co. v.The Metropolitan District, 13 Conn. Sup. 91, 95 (1944).
 III
Defendants also claim title to the southerly portion of the abandoned highway by adverse possession. "The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner." Kramer v. Petisi, 53 Conn. App. 62, 67, cert. denied, 249 Conn. 919 (1999), citing Lazof v. Padgett, 2 Conn. App. 246,248, cert. denied, 194 Conn. 806 (1984). "Adverse possession must be proven . . . by clear and convincing evidence." Kramer v. Petisi, supra, 67. "A prescriptive easement must be proved by a preponderance of the evidence". Schultz v. Syvertsen, 219 Conn. 81, 91 (1991). There is no evidence of the defendants having ousted any owner from possession. In fact, as stated above in this court's findings of fact, the defendants owned the entire abandoned highway until 1987. Adverse possession must be adverse to other than oneself. To determine otherwise would strain, say, snap, logic. The argument of a prescriptive easement over the southerly half of the abandoned highway must also fail. As set forth in General Statutes § 47-37, the use must be adverse and for a period of at least fifteen years. When there is a unity of possession in the dominant and servient estates, the use can not be adverse. The prescriptive period does not begin to run if the dominant and servient estates are under the same ownership. Steifel v. Lindemann, 33 Conn. App. 799, 810-11, cert. denied, 229 Conn. 914 (1994); Whiting v. Gaylord, 66 Conn. 337, 344
(1985). Again, as stated above in this court's findings of fact, the defendants owned the entire abandoned highway and the property abutting the abandoned highway to the south. The prescriptive period, then, could not have begun until 1987. The eleven year period from 1987 to the date of the complaint in 1998 is not sufficient under § 45-37 to create an easement by prescription.
 IV
Under General Statutes § 13a-55, owners of property abutting a discontinued or abandoned highway have a right-of-way over that highway to the nearest or most accessible highway. The discontinuance or abandonment must have taken place after 1959 (the date of the enactment of § 13a-55). Rudewicz v. Gagne, 22 Conn. App. 285, 291 (1990). The defendants argue that the wording used at the October 1, 1923 town of Morris meeting to "close" the abandoned highway rather than to discontinue the highway was not adequate under General Statutes (1918 Rev.) § 1442, the predecessor of General Statutes § 13a-49. CT Page 1443 "There is no doubt that the two methods of terminating a towns responsibility for a road differ. A highway may be extinguished by direct action through governmental agencies, in which case it is said to be discontinued; or by nonuse by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned." (Internal quotation marks omitted.) Doolittle v. Preston, 5 Conn. App. 448,451 (1985).
Clark v. Cornwall, 93 Conn. 374 (1919), is precedential authority for upholding the validity of the actions of the town of Morris at the October, 1923 meeting. In Clark, the selectmen of Cornwall had noticed a special town meeting to take action to discontinue portions of a certain highway. At the town meeting the "vote upon closing the road" (emphasis added) was passed. The Clark court stated: "[t]he town could not manifest its approbation of the discontinuance of this road in anymore pronounced way than by its vote of discontinuance." Clark v. Cornwall, supra, 378. "The vote of Cornwall was of the precise act of discontinuance. . . .[T]he incantation . . . [use of the specific word discontinuance] is not necessary. . . .The essence of the thing accomplished controls."Doolittle v. Preston, supra, 452.
Because the court finds that the abandoned highway was extinguished by the direct government action of October, 1923, the issue of nonuse need not be addressed. The claim of the defendants with respect to a right of way under § 13a-55 must fail since the abandonment here is prior to 1959.
Another significant result of the abandonment is the resultant vesting of title to the highway in the abutting owners. Alemany v. Commissionerof Transportation, 215 Conn. 437, 443 (1990); Ventres v. Farmington,192 Conn. 663, 668-69 n. 3 (1984); Antenucci v. Hartford Roman CatholicDiocesan Corp., 142 Conn. 349, 356 (1955); Fuller v. Planning ZoningCommission, 21 Conn. App. 340, 345 n. 6 (1990). Vesting means that the defendants had title to the abandoned highway in 1987 as discussed above.
FINDINGS AND ORDERS:
1) The court finds that the plaintiffs are the owners of the property as described in the deeds to the plaintiffs from Charles J. and Patricia A. Beaudoin dated May 23, 1991, and recorded May 24, 1991 (the "property").
2) The court finds that the southerly boundary of the property is the southerly line of the abandoned highway. CT Page 1444
3) The court finds that the defendants Richard A. and Catherine A. Hull have no right, title, interest or claim of any kind in and to any portion of the property including any portion of the abandoned highway described therein.
4) The defendants Richard A. Hull and Catherine A. Hull are permanently enjoined from using, entering on, or in any way interfering with the plaintiffs' use and enjoyment of the property.
5) The court finds that the defendants Richard A. and Catherine A. Hull have failed to demonstrate that they have acquired any interest in any part of the property either through adverse possession, prescriptive easement or under General Statutes § 13a-55 (the abandoned highway statute).
The court hereby quiets title to the property in the plaintiffs Randal D. Mackie and Joanna Mackie.
Judgment may enter in favor of the plaintiffs as to counts one, two and three of the complaint as well as the injunction requested. As set forth above, the court grants the plaintiffs' prayers for relief except as to damages, costs and interest.
CREMINS, J.