[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a dispute over ownership of land in the vicinity of the Hebron-Marlborough town line in which plaintiffs' amended complaint of February 9, 1990 was initially in seven counts, but counts against the towns of Hebron and Marlborough were withdrawn on the record prior to the commencement of trial, and plaintiff began trial on Counts One, Four and Five of said amended complaint. During the course of the trial the court rendered judgment for the defendants on Counts Four and Five, which alleged slander of title and intentional infliction of emotional harm. The only remaining count in the amended complaint is the first count, seeking a quiet title judgment with respect to land in dispute between the parties. The defendants have answered the allegations of the first count and set up three special defenses to that count. The first special defense is essentially the statement required by Connecticut General Statutes 47-31 in which defendants set forth their claim as to ownership of the disputed property. The second special defense alleges adverse possession of the disputed property and the third special defense claims an ouster of possession on the part of plaintiffs' grantor. As will be discussed more fully herein, there is no merit to the second and third special defenses. The first special defense will be treated in more detail later on in this opinion. Defendants have also pleaded a counterclaim in two counts, seeking in the first count a judgment quieting title in the defendants to the property in dispute and alleging in the second count adverse possession of the property. There is no merit whatsoever to the second count, claiming adverse possession, since the evidence is clear that, except for the possibility of a few months in 1976, defendants have not had possession of the property in dispute in any fashion whatsoever. Judgment will enter for the plaintiffs on the second count of defendants' counterclaim, and that basically leaves for consideration competing quiet title actions concerning a piece of property, as was previously stated, in the CT Page 3712 vicinity of the Hebron-Marlborough town line. The court has reviewed the numerous exhibits and heard several days of testimony, and finds the following.
Both parties' chains of title go back to the Estate of Arthur M. Keefe, whose property was, upon his death, distributed to his widow, Helen M. Keefe, in 1952. After the death of Helen Keefe to Robert Farley and John Kenefick (plaintiffs' Exhibit 6). The relevant description of the property conveyed to Farley and Kenefick (defendants' predecessors in title) in 1965 is as follows:
 "Situated on the southerly side of said Parker Road, so-called, and bounded easterly by the Hebron-Marlborough town line; northerly by said Parker Road; westerly by said road and by land of Arthur J. Keefe, in part by each, and southerly by land of Arthur J. Keefe, land of the State of Connecticut, land now or formerly of Ralph Strong and land now or formerly of Hosmer McKay, in part by each; containing by estimation eighty-six and one-half (86 1/2) acres, more or less:
 meaning or intending to convey all the remaining land situated in said town of Marlborough owned by the said Helen M. Keefe at the time of her decease . . ." (emphasis supplied).
The above-mentioned Arthur J. Keefe property is different land from the remaining land formerly of Arthur M. Keefe and has no relevance to this case.
Plaintiffs' Exhibits 7, 8 and 9 convey the property (with essentially the same description of the relevant area) through defendants' chain of title until plaintiffs' Exhibit 10, the warranty deed into the defendants, executed on April 6, 1976, which deed for the first time in defendants' chain of title described property to be conveyed by courses and distances, referring as well to a map of record (plaintiffs' Exhibit 18) and describing the easterly boundary of the parcel to be conveyed to plaintiffs, in addition to courses and distances as on the subdivision map in evidence as plaintiffs' Exhibit 18, as "along said Ely land and said Hebron-Marlborough town line."
Plaintiffs' Exhibit 11 is a 1980 quitclaim deed from the same grantors as in plaintiffs' Exhibit 10 to the defendants quitclaiming land bounded "northeasterly by the Marlborough-Hebron town line as the same exists; southerly by land now or formerly of Hosmer C. McKay, et al; and westerly by Lot 1 as CT Page 3713 shown on said map. " Those are all the relevant conveyances in the defendants' chain of title.
Plaintiffs' chain of title begins with the conveyances from the Estate of Helen Keefe to Margaret K. Ely (plaintiffs' Exhibit 2), a 1967 conveyance which describes the property conveyed by courses and distances and which describes the westerly boundary of the property conveyed as "thence N 22 degrees 18' 20" W along the Hebron-Marlborough Town Line, bounded westerly by land now or formerly of Robert Farley and John Kenefick . . ." That description of that line runs from "an iron stake set in cement in the Hebron-Marlborough [sic] Town line" to "a town monument in the southerly boundary line of said Coleman Road."
Plaintiffs' chain ends with the 1976 conveyances from Margaret Ely to plaintiffs of their property, the westerly boundary of which was described as running from "an iron stake set in cement in the Hebron-Marlborough town line, bounded westerly by land now or formerly of Robert Farley and John Kenefick, for a distance of six hundred fifty-six and two one-hundredths (655.02) feet to a town monument in the southerly boundary line of Coleman Road at the Hebron-Marlborough Town Line."
It is interesting to note, to return to plaintiffs' Exhibit 10 for a moment, that while the description in the warranty deed into the defendants does not describe any monumentation along the easterly boundary of the property deeded to the defendants, plaintiffs' Exhibit 19, a recorded map of a portion of plaintiffs' Exhibit 18 (mentioned in plaintiffs' Exhibit 10), the recorded subdivision map of defendants' property, does show monumentation at both ends of what is shown on that exhibit as defendants' easterly boundary. Plaintiffs' Exhibit 18 describes the line as "Mon to Mon Hebron Town Line", and plaintiffs' Exhibit 21, a September 1990 map prepared by the plaintiffs' surveyor, Mr. Conklin, describes both of these monuments, Mr. Conklin having recovered the concrete monument and the iron pin referred to in both plaintiffs' and defendants' chains of title.
Land located southeasterly of the land conveyed to Margaret Ely (plaintiff Edward Ely's mother) was conveyed by the Estate of Margaret Keefe after the 1965 deed to defendants' predecessors in title (Farley and Kenefick) but before the Estate's 1967 conveyance to Margaret Ely. That conveyance (plaintiffs' Exhibit 13) was to a Mr. Hall, who subsequently conveyed portions of that property to Kalhok and Grenus, by deeds in evidence as plaintiffs' Exhibits 14, 15 and 16. The court finds that plaintiffs' Exhibit 21 is an accurate depiction of the relationship of the various properties relevant to this case, and visual reference to plaintiffs' Exhibit 21 will be CT Page 3714 extremely helpful, if not essential, to follow the remainder of this opinion.
As is eminently clear from the evidence of all parties, the problem, and the reason for this property dispute, is the simple fact that the town line between Hebron and Marlborough, at least as fixed in 1983 by a survey done by one Hayes, is not where the parties thought that the line was, and indeed the line as presently constituted between the two towns runs through the middle of plaintiffs' home. There can be no doubt, and the court finds, that the administratrix of the Estate of Helen Keefe, who testified in this trial, intended that her conveyance to Farley and Kenefick, defendants' predecessors in title, be along the line labeled "assumed town line" on plaintiffs' Exhibit 21. Indeed, if that were the town line, everyone's description in every chain of title in this area fits perfectly with neither ambiguity nor conflict. The difficulty is, quite simply, that the "assumed town line" is not now and never was the town line between Hebron and Marlborough.
The problem analyzes best if it is begun with the court's decision on the defendants' counterclaim for a judgment quieting title. It is quite clear, and the court has no difficulty whatsoever in reaching the conclusion, that the defendants have failed to prove title to the property in dispute. The deed into the defendants (plaintiffs' Exhibit 10) is a description by courses and distances. If the description of the easterly boundary of the land as Ely property and the Hebron-Marlborough town line were to be considered by the court to be a monument, that would, under standard rules of construction, take precedence over the courses and distances set forth in the deed. Velsmid v. Nelson, 175 Conn. 221, 227 (1978). However, at all times prior to 1983, the location of the Marlborough-Hebron town line was sufficiently unclear so that its use as a reference in plaintiffs' Exhibit 10 cannot be considered a monument. In any event, the defendants' deed refers also to a subdivision map of record, which itself can be considered a monument, and that map shows two monuments, one at either end of the easterly bound of the defendants' property. It is quite clear that all the defendants received by plaintiffs' Exhibit 10 was, as the assessor of the town of Marlborough drew on the Marlborough assessor's map, land going only as far to the east as the "assumed town line" also designated as Line AB, of plaintiffs' Exhibit 21.
The evidence is also completely clear that within a matter of months after moving onto the property in 1976, plaintiffs and defendants were in disagreement about their boundary line, but that disagreement was caused by Mr. Ely's claim that he owned some additional land westerly of the "assumed town line". To CT Page 3715 forestall this claim the defendant Gallagher erected a fence slightly to the west of the "assumed town line" and from that time on the plaintiffs have occupied all of the disputed area in sufficiently open, visible, hostile and notorious possession, under a claim of right, as to have constituted (had it continued for 15 uninterrupted years) adverse possession of that property. Plaintiff correctly does not claim adverse possession, but this point is made because the 1980 quitclaim deed (plaintiffs' Exhibit 11, which itself is ambiguous and unclear) was executed by grantors who had been totally ousted of possession and is, therefore, void. Conn. Gen. Stats. 47-21, Robinson v. Meyer,135 Conn. 691 (1949).
Thus, even if defendants' interpretation of the earlier deeds in their chain of title were to be found to be correct, they cannot prevail because of the lack of strength of their own title to the disputed property.
To return to the analysis of plaintiffs' claim for a judgment quieting title to the disputed property, if the only focus were on plaintiffs' chain of title, it is a simple matter to find that at the time of the deed into Margaret Ely (1967) (which deeded property described by courses and distances), the town line was not able to be located with any precision. However, that town line was not where the grantor of the deed into Margaret Ely (plaintiffs' Exhibit 2) thought it was. Thus, the reference to the town line in plaintiffs' Exhibit 2 cannot be considered a monument. Thus, the courses and distances in that deed would then take precedence, and (except for the earlier conveyance [in plaintiffs' Exhibit 6] to defendants' predecessor in title) plaintiffs' chain of title would be proven.
The court finds from the evidence that the surveyor used by plaintiffs' predecessors in title, Ferdinand Czwaczka, who ironically enough was the surveyor who correctly placed the town line on the assessor's map in the approximate location as later determined by Hayes, (but not in that exact location) prepared surveys not only for Margaret Ely but also for a Mr. Grenus, one of Mr. Hall's successors in title, in which he located the Hebron-Marlborough town line in a position different from where it now is and in a position consistent with all of the deeds from the Arthur M. Keefe property.
In any event, for whatever reason, Mr. Czwaczka identified the town line between Hebron and Marlborough on surveys used by the grantors in this case and relied upon by all parties, although he located the town line differently from where it was finally located in 1983, and, in all fairness, differently from any other possible town line location. As a matter of deed construction, with courses and distances in the descriptions, it CT Page 3716 is a relatively straightforward question of deed construction to refuse to construe the reference to the Hebron-Marlborough town line as a monument and rely instead on the courses and distances not only "close" within themselves but are totally consistent with all other conveyances in the chain. This would also be a relatively straightforward matter of interpretation because it is clear from the evidence that the intention of the grantor (basically a question of fact) was that all references to the town line were really mentions of the "assumed town line."
Ultimately, the issue of construction of a deed is a question of law, Kelly v. Iveler, 187 Conn. 31, 39 (1982), although the meaning of the deed is to be determined in light of all of the surrounding circumstances. Lake Garda Assoc. v. Battistoni, 160 Conn. 503 (1971)
The real problem in plaintiffs' case is the deed from the Estate of Helen Keefe had already effectively deeded all property westerly of the Hebron-Marlborough town line (as it was located in 1983 and now) to Farley and Kenefick, the Estate had no property left in Marlborough to deed to Margaret Ely and, plaintiffs' claim to any land in Marlborough must fail.
It should be noted that the court heard considerable testimony about who paid taxes on what land, and those facts are not critical to the court's opinion. However, the court does find that after defendants took title to their property in 1976, the assessor of the town of Marlborough carried the disputed parcel as a separate tract in the name of Ely until the 1980 quitclaim deed was filed in the Marlborough land records, at which time the assessor appropriately (based on the limited information available to him) listed the land as owned by Gallagher and the Gallaghers paid a few years back taxes on that property. Prior to the subdivision (plaintiffs' Exhibits 18 and 19) all of the land in Marlborough in this area was taxed to defendants' predecessors in title. This was also appropriate given the description in plaintiffs' Exhibit 6 of the land conveyed to Farley and Kenefick (defendants' predecessors) that the intent of the deed was to convey all property in the town of Marlborough to the grantees.
It is, of course, a rule of construction that ambiguities in deeds will be conveyed against the grantor and in favor of the grantee. The court does find that plaintiffs' Exhibit 6 is ambiguous, since the description of abutting property owners on the southerly line of the property conveyed to Farley and Kenefick ends with Hosmer McKay's land, and makes no reference to any additional abutting property southerly and southeasterly of the point marked 10 on plaintiffs' Exhibit 21. The construction that the defendants urge on the court for CT Page 3717 plaintiffs' Exhibit 6, however, would include not only the disputed parcel of land but those tracts of land shown on plaintiffs' Exhibit 21 as owned by Grenus and Kalhock, or at least those portions of those tracts which are presently inn the town of Marlborough, that is, lying southerly of the "Hayes line" as shown on plaintiffs' Exhibit 21. That construction would lead to a ludicrous result, but is the only construction possible from defendants' claim that the "real town line" is the line described in plaintiffs' Exhibit 6. It is, of course, possible for the court to find that neither plaintiffs nor defendants have proven their claim to the disputed property, and presumably that would lead to a suit for deed reformation and additional litigation with more parties.
While it is desirable to end litigation between the parties, the court cannot create a deed construction where none exists. However, in this case there is a sufficiently sensible interpretation of the ambiguities in plaintiffs' Exhibit 6 so that, by the slimmest of preponderances, the court is able to find that plaintiffs' Exhibit 6 only conveyed property to the westerly side of the "assumed town line" to Farley and Kenefick.
As previously stated, there is no doubt but that the parties to plaintiffs' Exhibit 6 intended that the property conveyed to Farley and Kenefick go no farther east than the "assumed town line." The grantor of that deed, Mr. Ely's aunt, testified quite convincingly that she and Mr. Farley actually agreed on the boundary corner labeled as 10 on plaintiffs' Exhibit 21. To be sure, neither the iron pin nor the concrete monument were there, but a pile of stones and two distinctive trees were in existence at the time, and the court finds that that pile of stones and trees were at the location where the concrete monument was set in conjunction with the later conveyance from the Estate of Keefe to Hall and where the iron pin was set in conjunction with the later subdivision survey. Since there are only two possible constructions of the deed, and the one urged by defendants makes no sense whatsoever, the court will adopt the construction urged by the plaintiffs, that is, that the reference to the Hebron-Marlborough town line was in reality a reference to the "assumed town line." This is, after all, the line that the defendants' grantor described in plaintiffs' Exhibit 10 (the warranty deed into the defendants) and is the line with which the defendants and plaintiffs had been living since 1976, until the fixing of the town line in accordance with plaintiffs' Exhibit 20 in 1983. The defendants were aware of a discrepancy, or at least a possible discrepancy, in the town line since they retained Mr. Megson to produce a map (in evidence as plaintiffs' Exhibit 30) in which Mr. Megson described three possible town lines, none of them exactly the same as the Hayes line and one as far off to the north as the CT Page 3718 assumed town line is off to the south at its widest discrepancy in the area in dispute. The main reason for the confusion and for the difficulty in location the town line in this area was a destroyed (and never recovered) monument on West Street off the map shown as plaintiffs' Exhibit 21 in a southeasterly direction.
To reiterate and summarize, the court finds that it was the intention of the parties that plaintiffs' Exhibit 6 convey property only so far east as the "assumed town line." Therefore, the deed from the Estate of Helen Keefe to Margaret Ely effectively conveyed all of the land described in the courses and distances in that deed (plaintiffs' Exhibit 2).
Judgment will enter quieting title in the plaintiffs Edward A. Ely and Kathleen C. Ely in and to the following property: "A certain piece or parcel of land situated in the towns of Hebron and Marlborough being more particularly bounded and described as follows. Commencing at a town monument in the southerly boundary line of Coleman Road at the Hebron-Marlborough Town Line, thence S 87 degrees 27' 30" E along said Coleman Road for a distance of 192.04 feet to a gate post; thence S 86 degrees 13' 20" E still along the southerly boundary line of said Coleman Road for a distance of 173.96 feet to an iron post in the stone wall; thence southerly for a distance of 525.02 feet to an iron pipe set in cement at land now or formerly of Earl Hall; thence S 53 degrees 01' 00" W along a stone wall and said Hall land for a distance of 153.39 feet to an iron stake set in cement, and a concrete monument; thence N 35 degrees 15' 26" W along land now or formerly of Richard L. and Arlene S. Gallagher for a distance of 656.02 feet to a town monument in the southerly boundary line of Coleman Road at the Hebron-Marlborough Town Line at the place and point of beginning."
Judgment will enter for the plaintiffs on the first count of the defendants' counterclaim and, as previously stated, on the second count of that counterclaim as well. Judgment has been previously entered for the defendants on Counts Four and Five of the complaint. No costs will be taxed to either party.
KOLETSKY, J.